## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **HECKERT CONSTRUCTION COMPANY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-1151-CM** |
| | ) | |
| **SINCLAIR OIL CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion to compel plaintiff to answer deposition questions and to produce documents. (Doc. 62). For the reasons set forth below, the motion shall be **DENIED.**

### Background

Highly summarized, Heckert Construction Company (Heckert) alleges that in June 2008 Sinclair Oil Corporation (Sinclair) breached multiple contracts (the "old" contracts) to provide asphalt at $290 per ton. Sinclair contends that its asphalt supply was disrupted and that Heckert entered into a new contract to purchase asphalt at $530 per ton. Sinclair also alleges that the "new" contract contains provisions that release any causes of action that plaintiff had against Sinclair under the "old" contracts. Heckert counters that the release is

void because the new contract was entered into under economic duress.

### Defendant's Motion to Compel

The genesis of the discovery dispute before this court is a *qui tam* lawsuit filed in the Western District of Missouri against Heckert and certain of its officers and employees. (Case No. 04-4218-C-NKL, W.D. Mo., filed September 10, 2004). Relators in the Missouri case alleged that, beginning in 1996, Heckert and its officers manipulated a computer program in order to be overpaid for the amount of asphalt provided. Specifically, relators alleged that Chuck Heckert programmed the asphalt plant's computer to generate an invoice for one ton more than was actually loaded on a truck when the "F-10"computer key was pressed.[1] The *qui tam* case was settled in January 2008 with Heckert's payment of approximately one million dollars to the United States and relators. (Settlement Agreement, Doc. 59, Case No. 04-4218, W.D. Mo.) The settlement agreement covered the years 1996 to 2003 and expressly provided that: (1) defendants admitted no liability and (2) the United States released no criminal, tax, securities, or environmental claims against defendants.

Sinclair issued a Rule 30(b)(6) deposition notice to Heckert and specifically requested that a corporate representative appear and testify concerning "all facts relative to" the Missouri *qui tam* case. Chuck Heckert appeared as Heckert's corporate designee but, when asked certain questions about the *qui tam* case, refused to answer based on (1) his Fifth

---

[1]

For example, pressing the "F-10" key generated an invoice for 20 tons of asphalt when only 19 tons were actually loaded on a truck.

Amendment privilege, (2) a lack of relevance, and (3) Fed. R. Evid. 403.  Similarly, in response to Sinclair's production request for all documents related to the *qui tam* case, Heckert objected based on (1) the attorney-client privilege, (2) the Fifth Amendment, and (3) relevance.  Sinclair moves to compel production and answers, arguing that the requested information is relevant and that Heckert's objections are without merit.

Heckert's objection to discovery based on Fed. R. Evid. 403 is without merit.  Rule 403 does not address whether information is discoverable but instead provides the trial court with discretion to ***exclude relevant evidence*** "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Plaintiff's counsel erred when instructing Mr. Heckert not to answer deposition questions based on Rule 403.

With respect to Mr. Heckert's assertion of his Fifth Amendment privilege, Sinclair argues that plaintiff was obligated to provide a corporate representative for the Rule 30(b)(6) deposition "without Fifth Amendment concerns" and that not all questions asked of Mr. Heckert raised Fifth Amendment concerns.  Plaintiff counters that Sinclair (1)"made no attempt to ask particular questions that would not be protected by the witness' Fifth Amendment rights" and (2) failed to distinguish whether certain deposition questions were asked of Mr. Heckert in his individual versus his Rule 30(b)(6) capacity.

Without question, an officer of a corporation can invoke ***his*** Fifth Amendment privilege against compulsory self-incrimination.  <u>United States v. Kordel</u>, 397 U.S. 1, 7-8 (1957).  It is equally well established that a corporation is not protected by the constitutional

privilege against self-incrimination and cannot secure the benefits of the Fifth Amendment privilege by simply designating a corporate officer with personal Fifth Amendment concerns to answer discovery on behalf of the corporation. <u>Id.</u> The more difficult issue is whether a corporation can be compelled, as Sinclair requests in this case, to designate a substitute corporate representative when (1) the information can only come from the individual officer's personal knowledge and (2) disclosure would subject the officer to a "real and appreciable" risk of self-incrimination. <u>Id.</u>[2] Some courts have sidestepped this thorny issue by requiring an "adverse inference" instruction against the corporation when a corporate officer invokes *his* Fifth Amendment privilege. <u>See</u>, <u>e.g.</u>, <u>Curtis v. M&S Petroleum</u>, 174 F.3d 661, 674 (5th Cir. 1999).[3] However, this court need not resolve the issue of the Fifth Amendment privilege in light of the following analysis of relevance and Rule 26(b).

Relevance is broadly construed in the context of discovery which is "relevant" if the "discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Although "relevance" is broadly defined, "all discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." <u>Id.</u> Rule 26(b)(2)(C) directs the court to

---

[2]

The record does not indicate whether Mr. Heckert is the only source capable of answering the questions. The example merely illustrates the potential complexity of the issue raised by the parties.

[3]

Heckert also asserted a Fifth Amendment privilege in response to the production request for certain documents. Whether or not the Fifth Amendment privilege applies to the production of documents implicates a related but different line of cases which neither party cites. Again, because this motion is resolved on relevance and Rule 26(b), the court finds it unnecessary to address this issue.

limit the extent of discovery if:  (i) the discovery is unreasonably cumulative or duplicative or available from some source that is more convenient or less burdensome; (ii) the party had ample opportunity to obtain the information by discovery; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  The court turns to the parties' relevance arguments with these standards in mind.

Sinclair argues that its deposition questions and production requests concerning the *qui tam* action and settlement are relevant because the requests are likely to lead to admissible evidence concerning Heckert's claim of economic duress in 2008.  The court is not persuaded that the underlying merits of the *qui tam* case are relevant to the issue of "economic duress" because the wrongful conduct alleged in the *qui tam* case occurred from 1996 to 2003.  The settlement and payment of funds by Heckert in 2008 *is* relevant to the issue of economic duress because it provides information concerning Heckert's financial status.  However, the settlement agreement and the amount paid are matters of public record in the Missouri case and Sinclair already has that information.  Equally important, Heckert has admitted that it had sufficient funds to pay for the 2008 increase in the contract price for

asphalt and did not borrow any funds.[4]  The court is not persuaded that further discovery concerning the settlement agreement is necessary under Rule 26(b)(2)(C)(iii).

Sinclair also argues that questions about the *qui tam* action are relevant in evaluating Heckert's "credibility and trustworthiness" and necessary to determine whether "any of the fraudulent conduct alleged in the [*qui tam*] case continued beyond the time frame referenced in the amended complaint." Again, the court is not persuaded that discovery of the *qui tam* case is warranted under Rule 26(b)(2)(C)(iii).  As noted above, the conduct alleged in the *qui tam* case occurred from 1996 to 2003, a full five years before the alleged breach of contract in 2008 and there was no admission or finding of liability in the *qui tam* case.  The burden and expense of pursuing such discovery outweighs its likely benefit in this case; therefore, the request to compel shall be denied.

Finally, Sinclair argues that the requested information is relevant to Heckert's damage calculation.  However, Sinclair has not presented any persuasive argument that the conduct alleged in the *qui tam* action has any reasonable relationship to Heckert's damage

---

[4]

Heckert argues that Sinclair did not serve any discovery requests for financial statements, tax returns or any other financial documents and that the motion to compel is merely an attempt to inject prejudicial evidence into the case.  Sinclair does not dispute the accusation concerning its discovery requests but argues that "it is up to Sinclair to determine how to present its defenses and what discovery it pursues."  Doc. 70. p. 5.  Sinclair's views concerning its discovery options are misguided and Rule 26(b)(2)(C)(i) expressly directs the court to limit discovery if the information sought can be secured from a more convenient, less burdensome or less expensive source.  Rule 26(b)(2)(C)(i) provides an alternative ground for denying the motion to compel.

calculations for events that occurred in 2008.[5]  At best, Sinclair asserts that it should be permitted to ask Heckert whether fraudulent invoices are currently being submitted to Heckert's customers.  This argument is misleading because Sinclair's motion requests an order compelling Heckert to provide discovery concerning the *qui tam* action and events that happened from 1996 to 2003.[6] The connection between events alleged to have occurred from 1996 to 2003 in the *qui tam* action and the 2008 contract dispute in the case before this court are too tenuous and accordingly should be rejected.

**IT IS THEREFORE ORDERED** that Sinclair's motion to compel (**Doc. 62**) is **DENIED.** Sinclair's motion for oral argument (**Doc. 71**) is **MOOT** and therefore **DENIED.**

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 23rd day of January 2012.


S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge


---

[5]

Sinclair provides no analysis explaining how these invoices relate to plaintiff's damage calculations.

[6]

This question is also beyond the scope of the deposition topic which Sinclair seeks to compel.